**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**

    Plaintiff,

v.                                                    **CIVIL ACTION NO. 5:21-CV-7**
                                                     Judge Bailey

**ROUTE 22 SPORTS BAR, INC.**
and **CRAZY MEXICAN**
**RESTAURANT & GRILL, LLC,**

    Defendants.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR JUDGMENT ON THE PLEADINGS AND MOTIONS TO STRIKE

Pending before this Court is a variety of motions for judgment on the pleadings and motions to strike. On May 2, 2021, defendant Route 22 Sports Bar, Inc. ("defendant Route 22") filed its Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure [Doc. 31] and accompanying Memorandum in Support [Doc. 32]. Thereafter, defendant Crazy Mexican Restaurant & Grill, LLC ("defendant CM Restaurant") joined in the Motion [Doc. 35]. Plaintiff filed a Memorandum in Response to Defendants' Motion for Judgment on the Pleadings [Doc. 41] on May 14, 2021, and defendant filed its Reply Memorandum in Support of its Motion for Judgment on the Pleadings [Doc. 51] on May 21, 2021.

Plaintiff filed its Motion for Partial Judgment on the Pleadings or, in the alternative, Motion to Strike Certain of Defendants' Affirmative Defenses [Doc. 33] and accompanying

1

Memorandum in Support [Doc. 34] on May 3, 2021.  Defendant CM Restaurant filed its

Memorandum in Opposition to Plaintiff's Motion for Partial Judgment on the Pleadings or

Motion to Strike [Doc. 42] on May 17, 2021.  Defendant Route 22 filed its Memorandum in

Opposition to Plaintiff EEOC's Motion for Partial Judgment on the Pleadings or, in the

Alternative, Motion to Strike Certain of Defendants' Affirmative Defenses [Doc. 47] on May

17, 2021.  Thereafter, plaintiff filed its Reply in Support of its Motion for Partial Judgment on

the Pleadings or, in the Alternative, Motion to Strike Certain of Defendants' Affirmative

Defenses [Doc. 53] on May 24, 2021.

Plaintiff filed an additional Motion for Partial Judgment on the Pleadings and Motion

to Strike [Doc. 36] and accompanying Memorandum in Support [Doc. 37] on May 3, 2021.

Thereafter, defendants filed respective Memoranda in Opposition [Docs. 44 & 46] on May 17,

2021.  Plaintiff filed its Reply to Defendants' Memoranda in Opposition [Doc. 52] on May 24,

2021.   Having been briefed extensively, this Court will discuss the underlying factual

background, applicable legal standards, and the merits of each motion in turn.

### BACKGROUND

Plaintiff U.S. Equal Employment Opportunity Commission ("plaintiff" or "EEOC")

initiated this action through its complaint [Doc. 1] pursuant to Title VII of the Civil Rights Act of

1964 ("the Act").  Therein, plaintiff asserts that defendants subjected Madelene M. Billick and

a class of current and former aggrieved female employees to a hostile work environment on

the basis of their sex. [Doc. 1].  Moreover, plaintiff contends defendants subjected Billick to

retaliation for opposing defendants' unlawful employment practices. [Id.].  Defendants assert

a variety of defenses to plaintiff's claims in their respective answers, several of which are the

2

subject to the pending motions for judgment on the pleadings or, alternatively, motions to strike. *See* [Docs. 17 & 19].

## STANDARDS OF REVIEW

### I. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "In analyzing a party's motion for judgment on the pleadings pursuant to Federal Rule 12(c), the Fourth Circuit has indicated that the applicable standard is the same as a motion to dismiss pursuant to Federal Rule 12(b)(6), noting that the 'distinction is one without a difference.'" *Hurley v. Wayne Cty. Bd. of Educ.*, 2017 WL 2454325, at *3 (S.D. W.Va. June 6, 2017) (Chambers, C.J.) (quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002)); *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) ("The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6).") (citing *Butler v. United States*, 702 F.3d 749, 751 (4th Cir. 2012)). "The only difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is timing." *West Virginia Auto. and Truck Dealers Ass'n v. Ford Motor Co.*, 2014 WL 2440406, at *3 (N.D. W.Va. May 30, 2014) (Keeley, J.) (citing *Burbach*, 278 F.3d at 405–06); *see also Miller v. Liberty Mutual Insurance Co.*, 2013 WL 12137238, at *1 (N.D. W.Va. Nov. 4, 2013) (Bailey, C.J.) ("Rule 12(c) motions may be raised after the pleadings are closed, and are reviewed under the same standard as Rule 12(b)(6) motions to dismiss.") (citing *Burbach*, 278 F.3d at 405–06).

"Therefore, a motion for judgment on the pleadings 'should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" ***Drager***, 741 F.3d at 474 (quoting ***Edwards v. City of Goldsboro***, 178 F.3d 231, 244 (4th Cir. 1999)). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." ***Id.*** (citing ***Butler***, 702 F.3d at 752).

"Further, as a general matter, no information outside of the pleadings may be considered." ***EQT Corp. v. Miller***, 2012 WL 3839417, at *2 (N.D. W.Va. Sept. 5, 2012) (Stamp, J.) (citing Fed. R. Civ. P. 12(d)). However, the Court may consider any documents that are "integral to the complaint and authentic." ***Occupy Columbia v. Haley***, 738 F.3d 107, 116 (4th Cir. 2013).

## II.    Striking a Pleading

Federal Rule of Civil Procedure 12(f), on the other hand, permits a district court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). As the Fourth Circuit has recognized, "[A] defense that might confuse the issues of the case and would not, under the facts alleged, constitute a valid defense to the action, can and should be deleted." ***Waste Mgmt. Holdings, Inc. v. Gilmore***, 252 F.3d 316, 347 (4th Cir. 2001). "[I]f a movant can show that a defense is clearly insufficient, the court should grant the motion to strike." ***Racick v. Dominion L. Assocs.***, 270 F.R.D. 228, 232 (E.D. N.C. 2010). Before striking a defense, the court should determine that "there are no questions of fact, that any questions of law are clear and not in dispute, and that

under no set of circumstances could the defense succeed." *Nat'l Credit Union Admin. v. First Union Cap. Markets Corp.*, 189 F.R.D. 158, 163 (D. Md. 1999) (quoting *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W.Va. 1993)); *cf. U.S. Commodity Futures Trading Comm'n v. AS. Templeton Grp., Inc.*, 297 F.Supp. 2d 531, 533 (E.D. N.Y. 2003) ("In order to prevail on a motion to strike a defense for legal insufficiency, a plaintiff must show that (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense."). Furthermore, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (2nd ed. 1990)).

## DISCUSSION

As the parties have filed multiple briefs in support of their competing positions, this Court will address each Motion in turn.

### I.    Defendants' Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

In the first Motion, defendants assert that EEOC is mandated to obtain approval from its Commissioners prior to filing complaints alleging systemic discrimination. [Doc. 32 at 1]. Defendants contend that EEOC failed to plead or otherwise confirm whether its Commissioners approved the subject lawsuit. [Id. at 2]. More specifically, defendants state that EEOC's complaint "on its face establishes that the EEOC alleges systemic discrimination

5

and a pattern or practice of discrimination against Route 22." [Id. at 3]. Defendants note that prior to filing the subject Motion, they consulted the publicly available results of the Commissioners' votes for the period preceding the filing of the subject lawsuit and determined that the lawsuit was not included on the list of approved suits by the Commissioners. [Id. at 3–4]. Based on this purported failure to meet conditions precedent to filing suit, defendants conclude that the complaint should be dismissed. [Id. at 2].

In Response, plaintiff contends that in conformity with Federal Rule of Civil Procedure 9(c), it pleaded that all conditions precedent to the pending lawsuit were fulfilled. [Doc. 41 at 1–2]. Further, plaintiff argues that a full Commissioners vote authorizing the subject litigation is not a condition precedent to initiating the subject litigation. [Id. at 2]. In support thereof, plaintiff states that the plain language of the Act and controlling case law demonstrates that EEOC's internal procedures are not prerequisite to agency enforcement actions, and EEOC litigation decision-making is discretionary. [Id.].

In its Reply, defendants reassert that EEOC's litigation procedures require that the Senate-confirmed EEOC Commissioners approve systemic lawsuits prior to filing complaints. [Doc. 51 at 1]. Under these circumstances, defendants contend that this Court should grant judgment on the pleadings in their favor. [Id. at 2].

Federal Rule of Civil Procedure 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). Here, and in accordance with Rule 9(c), plaintiff has pleaded generally that all conditions precedent to instituting this action were fulfilled. *See*

6

[Doc. 1 at ¶ 12]. While defendants assert that this pleading is procedurally insufficient, this Court finds that, for purposes of a motion for judgment on the pleadings, plaintiff's allegation in Paragraph 12 of the complaint is sufficient, must be accepted as true, and all inferences therefrom must be construed in plaintiff's favor. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (quoting *Hanover Ins. Co. v. Urb. Outfitters, Inc.*, 806 F.3d 761, 764 (3d Cir. 2015) (finding that reviewing courts must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party)); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 861 F.3d 502, 506 (4th Cir. 2017) (same). While defendants counter that the statements contained in Paragraph 12 of the complaint are nothing more than mere legal conclusions and are not entitled to the assumption of truth, this Court disagrees when viewing plaintiff's complaint in the light most favorable to plaintiff.

Further, this Court is not persuaded by defendants' argument that plaintiff has failed to plead that all conditions precedent were performed because the Commission's internal litigation approval process is not a statutory condition precedent to suit.  As identified by plaintiff, under Section 706(b) of the Act, there are only four conditions precedent to filing suit that apply to the Commission: (1) a charge of discrimination and a notice of that charge to the employer; (2) an investigation; (3) a reasonable cause determination; and (4) an attempt to conciliate the violations found in the determination.  42 U.S.C. § 2000e-5(b).  It is well settled in the Fourth Circuit that these are the only statutory conditions precedent to suit that apply to the Commission.  *See, e.g., Mach Mining, LLC v. EEOC*, 575 U.S. 480, 483–84 (2015); *Occidental Life Ins. of Cal. v. EEOC*, 432 U.S. 355, 359–60 (1977); *EEOC v. American*

*Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981); *EEOC v. Raymond Metal Prod. Co.*, 530 F.2d 590, 592 (4th Cir. 1976) ("Title VII requires the commission to complete a four-step procedure before commencing judicial action. These steps are service of a notice of the charge, investigation, determination of whether there is a reasonable cause to believe the charge is true, and endeavors to eliminate the alleged unlawful practice through conference, conciliation, and persuasion. The commission can institute suit only if it has been unable to secure an acceptable conciliation agreement.")

When determining the conditions precedent that the Commission must satisfy before instituting an enforcement action, federal courts look to the statutory text of the Act. Under the statute, the Commission's statutory conditions precedent to suit terminate after the agency has been "unable to secure from the [employer] a conciliation agreement acceptable to the Commission." 42 U.S.C. § 2000e-5(f)(1); *see also Mach Mining, LLC*, 575 U.S. at 483–84 ("So long as 'the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission' itself, EEOC may sure the employer."). This is because the legislative purposes of EEOC's statutory conditions precedent to suit have been fulfilled once conciliation fails. *See EEOC v. American Nat'l Bnk*, 652 F2d at 1184–85 (noting the legislative purposes served by the statutory conditions precedent to suit are giving notice to the employer and the Commission of any alleged violations and giving the parties an opportunity to resolve any violations through conciliation and voluntary compliance). As identified by plaintiff, the statutory text of the Act does not state that the Commission's accurate implementation of its own, non-statutory litigation approval procedures, which occur

8

after the statutory conditions precedent have been fulfilled, is a condition precedent to suit. *See* 42 U.S.C. § 2000e-5(b).

Moreover, the decision to institute an EEOC enforcement action to redress violations of the Act is committed to the sole discretion of the agency and its personnel. Both the Act and the controlling case law make clear that EEOC's exercise of that discretion is not justiciable. *See* 42 U.S.C. § 2000e-5(f)(1); *see also **Mach Mining, LLC v. EEOC***, 575 U.S. 480, 483 (2015) ("The statute leaves to EEOC the ultimate decision whether to accept a settlement or instead bring a lawsuit."); ***EEOC v. Waffle House, Inc.***, 534 U.S. 279, 291 (2002) ("The statute clearly makes EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief.").

Contrary to defendants' assertion, federal courts have recognized that administrative agencies have the discretion to alter or modify their internal procedures when such procedures are adopted for the benefit of the agency and are not primarily intended to confer important procedural benefits upon those who deal with the agency. *See **Am. Farm Lines v. Black Ball Freight Serv.***, 397 U.S. 532, 538–40 (1970). The agency's compliance (or lack thereof) with its internal procedures is only subject to judicial review, if at all, upon a showing of substantial prejudice to the complaining party. *Id.* at 539.

Here, defendants contend that the Commission's internal litigation procedures were developed to protect American business owners. [Doc. 32 at 7–8]. According to defendants,

9

a Commission vote adds a layer of "oversight" and "scrutiny" to EEOC's claims. [Id.]. Without this additional layer of "scrutiny," defendants assert they have suffered prejudice because they are now required to defend the present action.  [Id.].

However, as identified by plaintiff, these procedures are not statutory, and are not regulations because the litigation approval procedures did not go through the notice-and-comment rulemaking process. *See Resolution Concerning the Commission's Authority to Commence or Intervene in Litigation and the Commission's Interest in Information Concerning Appeals* (Mar. 10, 2020), www.eeoc.gov/resolution-concerning-commissions-authority-commence-or-intervene-litigation-and-commissions; *see also **Usery v. Bd. of Educ. of Baltimore Cnty***, 462 F.Supp. 535, 548 (D. Md. 1978) (allowing the agency to proceed with litigation, even though it did not follow its internal handbook procedures, in part because its internal procedures "were not published in the Federal Register, were not intended by any government officials to have the force and effect of law, and were only guidelines for government personnel.") (internal citations omitted).

Moreover, the Commission did not pass the Resolution to shield employers from liability after the Commission has found reasonable cause to believe that said employers engaged in discriminatory employment practices; rather, the purpose of the Resolution, as its text makes clear, is "to ensure faithful execution of, and to better execute, the Commission's authority to commence or intervene in litigation and to promote the efficiency and effectiveness of the EEOC's enforcement of the law through litigation[.]" *See Resolution Concerning the Commission's Authority to Commence or Intervene in Litigation and the*

*Commission's Interest in Information Concerning Appeals* (March 10, 2020), www.eeoc.gov/resolution-concerning-commissions-authority-commence-or-intervene-litigation-and-commissions.

In this instance, the Resolution concerning pre-suit Commission voting does not confer any procedural rights upon employers, such as defendants, because employers subject to an EEOC enforcement action play no role in the agency's litigation approval process. Rather, it is clear from the text of the Resolution itself that it was intended to aid the Commission in the orderly and effective exercise of its judgment. Thus, these internal litigation approval procedures were developed for the benefit of the agency to exercise its prosecutorial discretion. *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970) (holding that regulations pertaining to application materials were promulgated to assist the agency in exercising its discretion, and not for the benefit of the applicants); *Steamboaters v. F.E.R.C.*, 759 F.2d 1382 (9th Cir. 1985) (holding that statutory filing requirements existed to assist the agency in exercising its discretion with regard to granting exemptions, and could therefore be waived or relaxed at the agency's discretion); *Int'l Longshoremen and Warehouse Union v. Solis*, 2011 WL 3667474, at *8 (N.D. Cal. Aug. 22, 2011) (agency's internal operations manual was not developed primarily to confer important procedural benefits to the union).

Defendants rely upon *United States v. Heffner*, 420 F.2d 809, 811–12 (4th Cir. 1969) in support of their proposition that agencies cannot deviate from their internal rules or policies. However, that case is distinguishable from the case at bar because the procedures at issue in *Heffner* were created primarily for the purpose of protecting the constitutional rights of

11

persons suspected of criminal tax fraud by the IRS.  Instead, the case at bar is more similar

to the persuasive authority cited by plaintiff wherein procedures like the subject Resolution

were crafted to aid in the exercise of an agency's discretion to file enforcement actions rather

than to grant procedural rights to prospective defendants.  *See, e.g.,* ***United States v.***

***Jackson***, 327 F.3d 273, 295 (4th Cir. 2003) (holding U.S. Attorney's failure to follow internal

protocol related to circumstances in which criminal prosecution was authorized "does not

provide license for courts to police compliance with that protocol, and it is well established that

the ***Petite*** policy and other internal prosecutorial protocols do not vest defendants with any

personal rights."); ***In re Grand Jury Proceedings No. 92-4***, 42 F.3d 876, 880 (4th Cir. 1994)

(holding U.S. Attorney's failure to follow internal guidelines for authority to issue subpoenas

was not ground for quashing subpoenas); ***United States v. Musgrove***, 581 F.2d 406, 407

(4th Cir. 1978) (holding U.S. Attorney's failure to comply with its internal policy regarding

authority to bring criminal charges was not grounds to vacate an otherwise valid conviction);

***United States v. Wilson***, 413 F.3d 382, 389–92 (3d Cir. 2005) (holding U.S. Attorney's

failure to follow internal policy for charging criminal defendants, and failure to obtain authority

from Attorney General to bring charges, did not create enforceable rights or render federal

conviction invalid).

Further, even if EEOC's application of its internal litigation approval procedures like

the Resolution granted procedural rights to defendants, they have not shown any cognizable

harm or substantial prejudice that would warrant relief in this instance.  Rather, the only

supposed relief that defendants claim they could obtain from a full-Commission vote is the

possible avoidance of the need to defend in the pending lawsuit.  *See* [Doc. 32 at 7].

However, various courts have refused to find that an agency's failure to follow its internal procedures prejudiced defendants in any cognizable way where the only purported harm identified by those defendants was the need to defend in a lawsuit. *See EEOC v. Raymond Metal Prod. Co.*, 530 F.2d 590, 596 (4th Cir. 1976) (allowing the agency to proceed with its action, even though it did not follow its internal procedures, where the only prejudice to defendant was the cost of litigation); *see also Brennan v. Lord & Taylor, Inc.*, 1975 WL 145, at *4 (S.D. N.Y. April 3, 1975) (allowing agency to proceed with suit, even though it did not follow its internal procedures because defendants failed to show substantial prejudice where "[t]he only conceivable 'prejudice' to which they have been put is the inconvenience of defending a lawsuit that perhaps could have been avoided.").

Here, the Commission's implementation of its internal litigation approval procedures, which serve to aid in the Commission's exercise of its discretion to institute litigation, is not subject to judicial review. Morever, even if it were, defendants have failed to demonstrate any cognizable prejudice resulting from the alleged failure to correctly apply those procedures.

Further, even assuming the implementation of the contested internal litigation approval procedures were a condition precedent subject to judicial oversight, the absence of an allegation that there was a full Commission vote would not demonstrate non-compliance with those procedures. Rather, the Resolution contemplates that most cases will not involve a full Commission vote. *See Resolution Concerning the Commission's Authority to Commence or Intervene in Litigation and the Commission's Interest in Information Concerning Appeals* (March 10, 2020), www.eeoc.gov/resolution-concerning-commissions-authority-commence-or-intervene-litigation-and-commissions. While Section 1.a. of the Resolution calls for a full

13

Commission vote in a subset of cases, the Resolution also created a process in which all proposed litigation was reviewed by the EEOC Chair, acting on behalf of the full Commission, to determine whether those cases warranted a full Commission vote under the Resolution. Id. at Section 2. If the EEOC Chair did not advise the General Counsel of the need to submit a case for a full Commission vote, the General Counsel possessed authority to determine whether to file an enforcement action. Id. Thus, if there is no public record of a Commission vote on a specific enforcement action as defendants contend, this is because: (1) the EEOC Chair, acting on behalf of the full Commission, determined that the case did not warrant a full Commission vote under the Resolution, and (2) the General Counsel was therefore authorized to file the enforcement action. Id. As such, the absence of a full Commission vote does not mean that an enforcement action, like the case at bar, is unauthorized.

Instead, defendants contention that the pending lawsuit should have been submitted for a full Commission vote hinges upon their attempt to recharacterize plaintiff's claims as "systemic." See [Doc. 32]. To support this contention, defendants cite to the allegations pleaded in plaintiff's complaint regarding a class of aggrieved female employees. [Id. at 3]. In other words, defendants equate a case seeking relief for a class of victims with a systemic claim.

However, the mere fact that the Commission seeks relief for a class does not render a case systemic. For example, the current EEOC regulations pertaining to the conciliation process distinguish between these two types of claims by using the terms "class" and "systemic" in the disjunctive. See, e.g., 29 C.F.R. § 1601.24(d)(4) (providing for Commission staff to advise the employer or other respondent in writing "that the Commission has

14

designated a case as systemic, class, *or* pattern or practice.") (emphasis added). Moreover, federal courts have consistently allowed EEOC to proceed with claims for a class of aggrieved persons even when it did not assert "pattern or practice" or "systemic" claims. *See* **EEOC v. 5042 Holdings Ltd.**, 2010 WL 148085, at *1 (N.D. W.Va. Jan. 11, 2010) (Bailey, J.).

Here, plaintiff has asserted sexual harassment claims seeking relief for a class of aggrieved females, not "pattern or practice" or "systemic" claims. *See* [Doc. 1]. It is not within the purview of this Court, at this stage of the litigation, to adjudge whether the Commission correctly interpreted its own claims and accurately implemented its own internal approval process prior to bringing suit. For all these reasons, defendant's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure will be denied.

II.   **Plaintiff's Motion for Partial Judgment on the Pleadings or, in the Alternative, Motion to Strike Certain of Defendants' Affirmative Defenses**

Plaintiff filed its Motion for Partial Judgment on the Pleadings or, in the Alternative, Motion to Strike Certain of Defendants' Affirmative Defenses seeking various forms of relief related to affirmative defenses asserted in both defendants' answers. In its answer, defendant Route 22 pleads 26 affirmative defenses. *See* [Doc. 17 at 10–13]. Defendant CM Restaurant asserts 27 nearly identical affirmative defenses in its answer. *See* [Doc. 19 at ¶¶ 42–68].

Defendant Route 22's second and twenty-fifth, and defendant CM Restaurant's first and sixth affirmative defenses, assert that plaintiff failed to fulfill one or more conditions precedent

to the initiation of this lawsuit.[1]  Defendant Route 22's third, and defendant CM Restaurant's

second, affirmative defense contends that plaintiff's claims for claimants other than Billick are

barred because those claimants did not exhaust their administrative remedies.  In the Motion,

plaintiffs first assert that defendants fail to deny with particularly and, in fact, admit in their

answers facts sufficient to show that plaintiff fulfilled each condition precedent to initiating this

litigation.  *See* [Doc. 34].  Additionally, plaintiff asserts that defendants admit all facts

necessary to show that plaintiff fulfilled its statutory duty to attempt conciliation.  [Id.].

A.   **Defendant Route 22's Second and Twenty-Fifth Affirmative Defenses
and Defendant CM Restaurant's Sixth Affirmative Defense Fail Under
Fed. R. Civ. P. 9(c).**

As identified above, the Act identifies four conditions precedent to EEOC enforcement

actions like the case at bar.  *See **EEOC v. Pierce Packing Co.**,* 669 F.2d 605, 607 (9th Cir.

1982) (describing four conditions precedent to EEOC litigation under Title VII); ***EEOC v. Am.***

***Nat'l Bank***, 652 F.2d 1176, 1185 (4th Cir. 1981) ("Before the EEOC may bring a civil action

under Title VII against an employer there must be a charge filed with the EEOC, notice of the

charge to the employer, investigation by the EEOC, a determination of reasonable cause, and

an effort at conciliation.").

Federal Rule of Civil Procedure 9(c) governs pleading conditions precedent and

provides in its entirety: "(c) Conditions Precedent. In pleading conditions precedent, it suffices

to allege generally that all conditions precedent have occurred or been performed.  But when

---

[1]While this Court addressed the argument amongst the parties concerning plaintiff's
conditions precedent earlier in this Opinion's Discussion section, this argument will also be
addressed in the context of plaintiff's competing Motion.

denying that a condition precedent has occurred or been performed, a party must do so with particularity." Id. "A party who intends to controvert the claimant's general allegation of performance or occurrence thus is given the burden of identifying those conditions that the denying party believes are unfulfilled and wishes to put into issue." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1304 (4th ed. 2008). A general denial that conditions precedent have occurred or been performed is insufficient because it does not comport with the particularity requirement of Rule 9(c). *See EEOC v. Serv. Temps Inc.,* 679 F.3d 323, 332 n.14 (5th Cir. 2012) ("Smith included in its answer only a general denial that all conditions precedent had been satisfied, which is insufficient under Fed. R. Civ. P. 9(c)."); *EEOC v. United Parcel Serv.*, 2017 WL 2829513, at *14 (E.D. N.Y. June 29, 2017) (striking affirmative defense that "badly assert[s] that the EEOC has failed to satisfy its pre-suit requirements without providing additional factual allegations").

Here, plaintiff alleges in its complaint that it satisfied all conditions precedent to litigation. [Doc. 1 at ¶ 12]. This allegation as to occurrence or performance of conditions precedent satisfies the pleading requirement of Rule 9(c). *See EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 106 (5th Cir. 1981) ("A general averment that 'all conditions precedent to the institution of this lawsuit have been fulfilled' is quite adequate for pleading purposes.").

Defendant Route 22's second affirmative defense generally denies the occurrence or performance of conditions precedent and does not, however, comport with the particularity requirement of Rule 9(c). Defendant Route 22's second affirmative defense states in its entirety: "Plaintiff's claims, and any potential relief, are barred because Plaintiff has failed to meet the required administrative pre-requisites." [Doc. 17 at 10]. Defendant CM Restaurant's

17

sixth affirmative defense repeats defendant Route 22's second affirmative defense verbatim. [Doc. 19 at ¶ 47]. While framed as affirmative defenses, in both these instances defendants are merely denying plaintiff satisfied all conditions precedent to litigation. As such, the denials are subject to the particularity requirement of Rule 9(c), which these general denials do not satisfy. *See Serv. Temps Inc.*, 679 F.3d at 332 n.14; *United Parcel Serv.,* 2017 WL 2829513, at *14. Accordingly, because defendants failed to plead with particularity their denials of conditions precedent, this Court will strike these affirmative defenses.

Similarly, defendant Route 22's twenty-fifth affirmative defense states in its entirety: "Plaintiff's claims are barred to the extent the EEOC failed to fulfill its statutory obligations regarding conciliation before filing this action." [Doc. 17 at 13]. Despite its characterization, this assertion is merely a denial of conditions precedent that is similarly subject to the particularity requirement of Rule 9(c). This denial does not satisfy the particularity requirement because it is general and conclusory and does not allege any facts showing that plaintiff failed to satisfy its statutory duty to attempt conciliation. *See EEOC v. Serv. Temps, Inc.*, 2010 WL 2381499, at *2 (N.D. Tex. June 11, 2010) (quoting *Klingler Elec. Corp.*, 636 F.2d at 107) ("If there is doubt that the EEOC's general averment [of conciliation] is true, in whole or part, the opposing party may raise the issue with a specific and particular denial."), *aff'd* 679 F.3d 323 (5th Cir. 2012). Because this pleading does not allege any specific facts concerning conciliation, this Court will strike this affirmative defense.

**B.    Defendant CM Restaurant's First Affirmative Defense Fails Because it Admits all Facts Necessary to Show that Plaintiff Fulfilled its Obligation to Attempt Conciliation.**

18

Like defendant Route 22's twenty-fifth affirmative defense discussed above, defendant CM Restaurant's first affirmative defense pleads that plaintiff failed to fulfill its statutory duty to attempt conciliation; however, defendant CM Restaurant pleads additional supporting facts. Specifically, defendant CM Restaurant's first affirmative defense states: "The Plaintiff has failed to fulfill all conditions precedent to the institution of the instant action since the Plaintiff has not engaged in a bona fide good faith effort to conciliate Billick's and the Class' claims." [Doc. 19 at ¶ 42].   Defendant CM Restaurant then attempts to characterize several communications with plaintiff during the conciliation process in support of its position that the conciliation was not engaged in good fath.   [Id.].   Still, this Court agrees with plaintiff's argument that defendant CM Restaurant's affirmative defense is improper given its admission that (1) EEOC notified it that EEOC had found reasonable cause that it had violated the Act and (2) EEOC attempted to engage in a remedial discussion concerning those purported violations.

Section 706(b) of Title VII sets forth EEOC's duty to attempt conciliation.  It provides that if after an investigation EEOC finds reasonable cause to believe that discrimination has occurred, "the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."   42 U.S.C. § 2000e-5(b).

In *Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015), the Supreme Court of the United States held that the scope of judicial review of EEOC's conciliation duty is "narrow, reflecting the abundant discretion the law gives the EEOC to decide the kind and extent of discussions appropriate in a given case."  *Id.* at 495.  Indeed, the scope of judicial review of EEOC's

19

conciliation duty is restricted to determining that EEOC satisfied two requirements: (1) EEOC must have informed the employer about the unlawful employment practice that it found reasonable cause to believe had occurred and (2) EEOC "must [have] tr[ied] to engage the employer in some form of discussion (whether written or oral) so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* at 494. "Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute." *Id.*

Notably, the Supreme Court of the United States rejected a "good-faith" standard for EEOC's conciliation duty, stating that "Title VII ultimately cares about substantive results, while eschewing any reciprocal duties of good-faith negotiation." *Id.* at 491. Accordingly, a reviewing court "looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions." *Id.* at 494. Describing the broad discretion that Title VII afford to EEOC with respect to conciliation methods, the Supreme Court of the United States explained:

> Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief. For a court to assess any of those choices–as Mach Mining urges and many courts have done . . .–is not to enforce the law Congress wrote, but to impose extra procedural requirements. Such judicial review extends too far.

*Id.* at 492.

While defendant CM Restaurant disputes the accuracy of plaintiff's conciliatory findings, it admits in its answer that plaintiff issued a letter of determination finding reasonable cause to believe it had violated the Act with respect to Billick and a class of female employees.  Moreover, defendant CM Restaurant admits that plaintiff tried to engage in some form of discussion to remedy the purported violations of the Act.  Under *Mach Mining*, that is all plaintiff was required to do to satisfy its conciliation duty.  Defendant CM Restaurant's argument that plaintiff should have shared more information with it concerning the purported violations is the very argument that the Supreme Court of the United State rejected in *Mach Mining*.  As such, this Court will strike this affirmative defense.

**C.    Defendant Route 22's Third and defendant CM Restaurant's Second Affirmative Defenses Fail because Plaintiff is not Required to Exhaust Administrative Remedies Prior to Bringing an Enforcement Action.**

Defendant Route 22's third affirmative defense states in its entirety: "The unnamed class members' claims, and any potential relief, are barred because they have failed to exhaust their administrative remedies."  *See* [Doc. 17 at 10].  Similarly, defendant CM Restaurant's second affirmative defense states in its entirety:

The Plaintiff's claims brought on behalf of the Class are barred as a result of the Class members' failure to exhaust administrative remedies.  No Class member has filed a charge of discrimination with the Plaintiff alleging any violation of Title VII on the part of CM Restaurant or Route 22 or otherwise exhausted their administrative remedies.

21

*See* [Doc. 19 at ¶ 43]. However, this lawsuit is not a private action brought by a private person to enforce, redress, or protect Billick's civil rights. Rather, it is a public enforcement action brought by the Government to enforce, redress, and protect civil rights in the public interest. *See **Gen. Tel. Co. of the Northwest., Inc. v. EEOC***, 446 U.S. 318, 326 (1980). The claims that charging parties may bring in private actions under Title VII and the claims that plaintiff may bring under Title VII present different questions of law because, as a matter of statute, the Act treats the two types of lawsuits differently. *See **EEOC v. Waffle House, Inc.***, 534 U.S. 279, 287 (2002) ("Prior to the 1991 amendments, we recognized the difference between the EEOC's enforcement role and an individual employee's private cause of action . . . ."). Within the litigation-enforcement scheme the Act creates, private actions by charging parties and EEOC enforcement actions are independent remedial mechanisms. *See* 42 U.S.C. § 2000e-5(f)(1) (distinguishing between civil actions by "the Commission" and "the person claiming to be aggrieved"). But while private actions seek to vindicate only private interests, EEOC enforcement actions seek to vindicate not only aggrieved persons' private interests, but also the public interest generally. As the Sixth Circuit has described:

> Title VII makes clear, the EEOC and aggrieved individuals seek to vindicate distinct though overlapping interests. Congress vested the EEOC with the responsibility of protecting not only the rights of certain aggrieved individuals, but also the public interest generally. The EEOC therefore pursues an interest broader than the one a private Title VII litigant pursues.

***EEOC v. Frank's Nursery & Crafts, Inc.***, 177 F.3d 448, 462 (6th Cir. 1999).

22

Given its role as the intended primary enforcer of the Act, plaintiff possesses broader litigation authority than private parties. *See Gen. Tel. Co. of the Nw., Inc.*, 446 U.S. at 326 ("The EEOC was to bear the primary burden of litigation . . . ."); *Waffle House, Inc.,* 534 U.S. at 297 ("[I]t simply does not follow from the cases holding that the employee's conduct may affect the EEOC's recovery that the EEOC's claim is merely derivative. We have recognized several situations which the EEOC does not stand in the employee's shoes."). Thus, while the Act authorizes charging parties like Billick to bring private actions after they have exhausted their administrative remedies, the claims that charging parties like her can bring in private actions are categorically more limited than the claims plaintiff can bring in enforcement actions. *See Gen. Tel. Co. of the Northwest., Inc.*, 446 U.S. at 331 (declining to apply typicality requirement of Fed. R. Civ. P. 23 to EEOC enforcement actions because "[t]he latter approach is far more consistent with the EEOC's role in the enforcement of Title VII than is imposing the strictures of Rule 23, which would limit the EEOC action to claims typified by those of the charging party").

Befitting its leading role in the Act's litigation-enforcement scheme, it is well established that so long as one valid charge of discrimination was filed, plaintiff may pursue remedies under § 706 for other aggrieved persons who have not filed charges of discrimination. *Id.* at 324 ("Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."). "Any violations that the EEOC ascertains in the course of a reasonable investigation of a charging party's complaint are actionable." *Id.* at 331. "Once

23

the EEOC begins an investigation, it is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation." *EEOC v. Kronos, Inc.*, 620 F.3d 287, 297 (3d Cir. 2010). The original charge of discrimination provides EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices," which investigation may well "disclose, as in this instance, illegal practices other than those listed in the charge." *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir. 1975); *see also EEOC v. Caterpillar, Inc.* 409 F.3d 831, 833 (7th Cir. 2005) ("The charge incites the investigation, but if the investigation turns up additional violations, the Commission can add them to its suit."). As such, the federal courts have routinely held that EEOC has authority to litigate categories of discrimination not alleged in the charge of discrimination that triggered EEOC's investigation, but which EEOC later uncovered during the course of its investigation. *See EEOC v. Chesapeake & O. Ry. Co.*, 577 F.2d 229, 231–32 (4th Cir. 1978) ("In *General Electric* we ruled that a suit brought by the commission is not limited to the initial charge; the suit can be based on evidence of other discrimination developed in the course of a reasonable investigation of an initial charge, provided that these illegal practices are 'included in the reasonable cause determination of the EEOC and . . . [are] followed by compliance with the conciliation procedures fixed in the Act.'").

Under the reasonable-investigation standard, EEOC enforcement actions are not limited to the precise types of discrimination or aggrieved persons identified in the administrative charge that triggered EEOC's investigation. As explained by the Seventh Circuit:

24

> The difference between the two classes of cases is that exhaustion of administrative remedies is an issue when the suit is brought by a private party but not when the Commission is the plaintiff. Were the private party permitted to add claims that had not been presented in the administrative charge filed with the EEOC, the Commission's informal procedures for resolving discrimination charges . . . would be bypassed, in derogation of the statutory scheme. . . . That is not an issue when the EEOC itself is the plaintiff, which is why a suit by the EEOC is not confined "to claims typified by those of the charge party," . . . and why Caterpillar is mistaken to think that the EEOC's complaint must be closely related to the charge that kicked off the Commission's investigation. "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable."

*Caterpillar, Inc.*, 409 F.3d at 832–33 (citations omitted).

Applying the foregoing, this Court and other federal courts have recognized the well-settled rule that EEOC may prosecute claims in enforcement actions regarding aggrieved persons who did not file their own charges of discrimination (i.e., those who did not exhaust their administrative remedies). *See EEOC v. 5042 Holdings Ltd.*, 2010 WL 148085, at *1 (N.D. W.Va. Jan. 11, 2010) (Bailey, C.J.) ("[I]t has long been the law of this Circuit that the EEOC possesses broad statutory authority to expand the scope of its litigation to encompass classes/groups of victims and claims not identified in the administrative charge precipitating the EEOC's lawsuit . . . ."); *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) (holding an action under the Age Discrimination in Employment Act of 1967 that "the

25

Commission is not bound by the failure of the Sidley ex-partners to exhaust their remedies;

the *Commission* had no duty to exhaust"); *EEOC v. Scott Med. Health Ctr., P.C.*, 217

F.Supp.3d 834, 837 (W.D. Pa. 2016) (rejecting defendant-employer's argument that

administrative-exhaustion requirement applicable to private litigants applies equally to EEOC

enforcement actions in case involving non-charge-filing aggrieved person); *EEOC v. United*

*Health Programs of Am., Inc.,* 213 F.Supp.3d 377, 403–04 (E.D. N.Y. 2016) ("Courts have

permitted the EEOC to add new claimants identified during discovery even when the EEOC

is asserting claims under Section 706 of Title VII rather than exclusively under Section 707,

which permits 'pattern or practice' actions."); *EEOC v. Stone Pony Pizza, Inc.*, 172

F.Supp.3d 941, 949 (N.D. Miss. 2016) ("Because of the statutory and judicially recognized

breadth of the EEOC's authority to enforce its own statute, the Court finds that the EEOC has

the authority to sue on behalf of the individual plaintiffs in this case regardless of whether they

filed individual charges with the EEOC.").  Because the Act does not require each EEOC

claimant to have exhausted administrative remedies in order for plaintiff to seek relief in this

enforcement action, this Court will strike these affirmative defenses.

### III.    Plaintiff EEOC's Motion for Partial Judgment on the Pleadings and Motion to Strike

Plaintiff filed an additional Motion for Partial Judgment on the Pleadings and Motion

to Strike [Doc. 36] on May 3, 2021.  In its Memorandum in Support [Doc. 37], plaintiff requests

that this Court grant it a judgment on the pleadings concerning defendant Route 22's fourth

affirmative defense and defendant CM restaurant's forty-eighth affirmative defense.  [Id. at 2].

Further, plaintiff requests that this Court strike defendant Route 22's denials and allegations

at paragraphs nos. 1 & 3 in its answer, and defendant CM Restaurant's denials and allegations at paragraph nos. 1 & 3 in its answer. [Id.].

Here, defendants affirmative defenses and denials and allegations at issue center on the previously discussed internal agency litigation authorization procedures above.[2] However, as previously noted by this Court, these procedures are not a condition precedent to instituting a public enforcement action, nor are they an affirmative defense to liability. However, even assuming *arguendo* that the litigation authorization procedures cited by defendants were somehow relevant to the disposition of this case, defendants' position would still fail as a matter of law.

The litigation approval procedures to which defendants refer in their answers are memorialized in a March 10, 2020, Resolution passed by the Commissioners, and the Resolution contains a list of certain categories of cases that are to be submitted for a full Commission vote prior to filing suit. Among the types of cases listed that warrant full Commission vote is Category 1.a., which provides for such requirement in cases involving an allegation of systemic discrimination or a pattern or practice of discrimination. Id. Defendants seek to rely upon Category 1.a. of the Resolution to conclude that the present action is not authorized because there is no record of a full Commission vote.

Once the Commission has found "reasonable cause to believe that [a] charge is true" under the Act, and if the Commission has been unable to secure a conciliation agreement to its satisfaction, it can proceed to court under either or both of the following ways: (1) by filing

---

[2]This Court fully incorporates and adopts its analysis concerning statutory conditions precedent from this Order's First and Second Discussion subheadings herein.

suit under Section 706(f) to remedy unlawful employment practices, which may or may not include a claim asserting a pattern or practice of discrimination, and (2) by filing suit under Section 707, which expressly authorizes an action to correct a pattern or practice of discrimination.  *See* 42 U.S.C. §§ 2000e-5(b) & (f)(1); 42 U.S.C. § 2000e-6.

Here, the Commission filed its enforcement action solely pursuant to Section 706(f)(1). *See* [Doc. 1 at ¶ ¶ 1 & 3].  Plaintiff has not alleged a "pattern or practice" of discrimination anywhere in its complaint.  [Id.].  Nor has plaintiff referenced "systemic" discrimination in any way.  [Id.].  Rather, defendants appear to assert that because plaintiff is seeking relief for Billick and a class of current and former female employees, such claims must necessarily be pattern or systemic claims despite the absence of any such allegations in the complaint.

However, the mere fact that plaintiff seeks relief for a class of aggrieved persons does not mean that the case involves a "pattern or practice" claim.  Federal courts have recognized that EEOC possesses broad statutory authority under Section 706 to seek relief for a class or group of identified and unidentified aggrieved persons without asserting a pattern or practice claim.  *See, e.g., **EEOC v. Jetstream Ground Sys., Inc.**, 134 F.Supp.3d 1298, 1327–28 (D. Colo. 2015) (rejecting argument that EEOC cannot seek relief for non-charging parties unless it asserts pattern or practice claim, stating "The EEOC is permitted to pursue claims on behalf of non-charging parties in its enforcement capacity regardless of whether it brings these claims under Section 706 or Section 707") (citation omitted); **EEOC v. Fisher Sand & Gravel Co.**, 2011 WL 13262378, at 4* (D. N.M. March 31, 2011) (holding EEOC authorized to pursue relief on behalf of class members who were unidentified in non-pattern or practice action); **EEOC v. Bare Feet Shoes of PA, Inc.**, 2006 WL 328355, at *3 (E.D. Pa.

Feb. 10, 2006) (holding in non-pattern or practice case that EEOC has authority to pursue a claim for non-filing sexual harassment victim).

As for defendants assertion that this suit must be a "systemic" case, that term does not appear anywhere in the text of the Act and, therefore, lacks any statutory definition capable of being discerned and applied. Since the Act's conditions precedent are defined solely by the express language of Section 706(b), any attempt to characterize this case as "systemic" is necessarily irrelevant to whether those statutory conditions precedent have been satisfied.

Furthermore, and as noted above, when an agency's internal procedures are adopted and are not intended to confer important procedural rights or benefits upon those who deal with the agency, the agency's compliance with these procedures is not subject to judicial review. *See **Am. Farm Lines v. Black Ball Freight Serv.**,* 397 U.S. 532, 538–40 (1970). Rather, interpretation, application and enforcement of those internal procedures is a matter left to the agency. For these reasons, defendants' defenses and assertions concerning EEOC's litigation approval process fail as a matter of law, and this Court will strike these defenses and assertions.

## CONCLUSION

For the reasons articulated herein, this Court hereby **ORDERS** the following:

1. Defendant Route 22 Sports Bar, Inc's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure [**Doc. 31**] is **DENIED**. While permitted to join in the Motion, to the extent defendant CM Restaurant sought the same relief in its Joinder in Motion for Judgment on the Pleadings, the same [**Doc. 35**] is **DENIED**.

29

2. Plaintiff EEOC's Motion for Partial Judgment on the Pleadings or, in the Alternative, Motion to Strike Certain of Defendants' Affirmative Defenses [**Doc. 33**] is **GRANTED IN PART**. As such, defendant Route 22's second, third, and twenty-fifth affirmative defenses are **STRICKEN**.   Similarly, defendant CM Restaurant's first, second, and sixth affirmative defenses are **STRICKEN**.

3. Plaintiff EEOC's Motion for Partial Judgment on the Pleadings and Motion to Strike [**Doc. 36**] is **GRANTED IN PART**. As such, defendant Route 22's fourth affirmative defense and defendant CM restaurant's forty-eighth affirmative defense are **STRICKEN**. Moreover, paragraph nos. 1 & 3 in defendant Route 22's answer, and paragraph nos. 1 & 3 in defendant CM Restaurant's answer, are **STRICKEN**.

It is so **ORDERED**.

The Clerk is directed to transmit true copies of this order to all counsel of record.

**DATED**: June 22, 2021.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

30